IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PARK NATIONAL BANK,
as successor in interest to
REGENCY SAVINGS BANK,

        Appellant,

v.                                           CASE NO. 1:06-cv-00077-MP-AK

UNIVERSITY CENTRE HOTEL, INC.,

        Appellee.

_____/

## O R D E R

      This matter is before the Court on appeal, pursuant to 28 U.S.C. § 158(a), from the final

order of the United States Bankruptcy Court for the Northern District of Florida, Gainesville

Division (the "Bankruptcy Court"), denying Regency Savings Bank's ("Regency") application

for allowance of administrative claim.  Appellant Park National Bank ("Park National" or the

"Appellant"), as successor in interest to Regency, appeals the Order of the Bankruptcy Court

denying its Motion to Assess Legal Fees and Costs against University Centre Hotel Inc. ("UCH"

or the "Debtor") and its Application for Allowance of Administrative Claim pursuant to 11

U.S.C. § 503(b)(1)(A).  Oral arguments on this matter were heard on October 19, 2006.

      Because this Court functions as an appellate court in reviewing the decision of the

Bankruptcy Court, three standards of review apply.  First, because no independent fact finding

occurs at the appellate level, the Bankruptcy Court's factual findings are reviewed under the

clearly erroneous standard.  Second, all determinations of law by the Bankruptcy Court are

reviewed de novo.  Finally, the Bankruptcy Court's decision whether to award administrative

expense priority pursuant to 11 U.S.C. § 503 is reviewed under the abuse of discretion standard.

"Orders implicating the equitable discretion of the bankruptcy court in directing immediate payment of an administrative expense are reviewable for an abuse of discretion." In re Colortex Industries, Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). See also In re Tama Beef Packing, Inc., 290 B.R. 90 (B.A.P. 8th Cir. 2003), appeal dismissed, 92 Fed. Appx. 368 (8th Cir. 2004). A bankruptcy court abuses its discretion when its ruling is founded on an error of law or on misapplication of the law to the facts. "The question is not how reviewing court would have ruled, but whether reasonable person could agree with the bankruptcy court's decision." In re Eagle-Picher Industries, Inc., 285 F.3d 522, 529, 2002 Fed. Appx. 0112P (6th Cir. 2002). Because the Bankruptcy Court's decision is supported by the law and is not an abuse of discretion, it is affirmed.

## I. Background

This case arose from a transaction on January 20, 2000, when University Centre Hotel, Inc. and Lido Bay Resort, LLC, entered into loan agreement with Southern Pacific Bank (the predecessor in interest to Regency Savings Bank and Park National Bank), and executed a Note for $7,300,000. Both UCH and Lido Bay are companies owned and controlled by Anthony Liuzzo. As security for the Note, both companies delivered a mortgage agreement to the Lender on property throughout Florida, as well as an assignment of rents. Finally, Anthony Liuzzo, owner of both companies, executed an unconditional Guarantee for the Note. Both the Note and the Guarantee contained contractual provisions for the recovery of prevailing party attorney's fees and costs. After UCH initially defaulted on the loan, it filed its voluntary Chapter 11 petition on October 18, 2002. Before the Note matured, Southern Pacific Bank stipulated with UCH to pay the default interest at the rate of 25% percent per annum in exchange for a pay-

down of $3,000,000.  On February 1, 2003, the Note matured, and UCH and Luizzo defaulted by failing to pay their obligations under the Note.  After the property in Gainesville that secured the Note was sold to Shands Healthcare, leaving a deficit in the loan, Regency, which had acquired the Note, filed an action in the Circuit Court of the Eighth Judicial Circuit against Luizzo as guarantor for his refusal to pay the deficiency.  The Debtors, UCH and Lido Bay, were permitted by the Bankruptcy Court to intervene in this state court action to pursue a counterclaim against Regency.

The counterclaim against Regency sought in excess of $20,000,000 for usury, civil remedies for criminal practices act violation, tortious interference, abuse of process, and breach of fiduciary duty.  The state court found in favor of Regency on the breach of guarantee and found against the Debtors and Guarantor on each counterclaim.  This decision is currently on appeal to the First District Court of Appeal.  The state court decision found the amount of money owed Regency was $330,805.42 for interest and late fees, $149,506.59 for legal fees prior to June 20, 2003, and $630,022.76 for legal fees from July 1, 2003 to December 29, 2005.  The decision then stated: "By virtue of the Guarantee, Anthony Luizzo owes the above sums to Plaintiff.  Therefore, it is hereby ORDERED AND ADJUDGED that Plaintiff Regency Savings Bank recover from Defendant Anthony Luizzo . . . the sum of $1,110,334.77."  Doc. 10, ex. #6 at 11.

## II. The Bankruptcy Court's Order

After the state court entered judgment, Regency filed its Motion to Assess Legal Fees and Costs and Application for Allowance of Administrative Claim with the Bankruptcy Court on January 11, 2006.  The Administrative Claim Application requested fees to be assessed against UCH in the amount of $316,002.58, and also requested that such fees be treated as an

administrative expense of the Debtor pursuant to 11 U.S.C. § 503 because the fees were incurred as a result of the Debtor's unsuccessful pursuit of post-petition litigation.  The Bankruptcy Court denied Regency's Administrative Claim Application, stating that: "Since [the] State Court did not award attorney's fees against the debtor for prosecution of the action, they are not an obligation of the debtor estate and accordingly will not be allowed [as] an administrative expense of this estate."  Doc. 10, ex. #8 at 3.  The basis for this denial was that the state court's judgment for money damages "is only against Anthony Liuzzo, not the debtor in this case."  Id.  Because Mr. Liuzzo, as guarantor, had posted a bond to satisfy the full amount owed while the case was on appeal, the Bankruptcy Court saw no reason to treat Regency's contractually-owed attorney's fees as administrative expenses, which would give Regency first priority over other creditors.

Since the Bankruptcy Court's order is rather short, the record helps explain many of the issues reflected in the order.  During the hearing before the Bankruptcy Court on the Administrative Claim Application, the court was troubled by several aspects of the treating the attorney's fees as administrative expenses.  First, the Bankruptcy Court was concerned that the amount that Regency sought to collect as attorney's fees from UCH– $316,002.58–was not related solely to UCH's counterclaim, as two other defendants had also pursued the same counterclaim.  "How much of this relates just to the counterclaim by the debtor? . . . You're clearly not entitled to $316,000, but you came in asking for it."  Doc. 17 at 11.  Second, the Bankruptcy Court expressed concern that Regency was trying to collect its fees from UCH even though a bond had been posted by Mr. Luizzo, the initiator of the counterclaim that UCH joined.  "[I]f you collect from Mr. Luizzo, he's all you're getting it from.  If you take an administrative expense from this estate, you've gutted whatever's left to pay any creditors of this estate.  Why

should the creditors of this estate completely fund the liability of Mr. Luizzo for attorney's fees?" Id. at 13.

Finally, the Bankruptcy Court viewed UCH's role in the counterclaim as different than Mr. Luizzo and Lido Bay: "[I]t seems the debtor was a kind of me too, tag along, just so the issues that were raised by Luizzo and Lido Bay in the state court could also be binding . . . and the debtor was tagging along just to get whatever benefits or at least a final adjudication." Id. at 20.  This raised problems in allocating the state court judgment between the three parties.  "What additional expenses were the result of the debtor's actions? . . . And I have absolutely no way of coming up with that."  Id. at 38.  At the end of the hearing, the Bankruptcy Court seemed concerned at Regency attempting to collect from UCH when it had a secured bond for the entire amount owed: "Why do we keep on coming back here and arguing over what little is left in this estate when you have a bond to recover everything you're owed? . . .  My job is to watch over the creditors of this estate.  And the bank is here trying to suck every dollar there is out of this estate."  Id. at 44.

### III.  Review of the Bankruptcy Court's Decision

The central issue on appeal is whether the Bankruptcy Court erred in finding that Regency was not entitled to an administrative expense claim for its legal fees and costs incurred by virtue of UCH's unsuccessful post-petition pursuit of a counterclaim in a state court action against Regency, pursuant to a pre-petition contract between UCH and Regency with a prevailing party fee and cost provision.

### A. Automatic Stay Under  11 U.S.C. § 362(a)

Park National's chief argument on appeal is that the Bankruptcy Court erred when it

based its decision on the lack of a state-court award of fees because such an award would violate

the automatic stay provision of the Code.

> There is no legal support for the position taken by the Bankruptcy Court to wit:
> that the Bankruptcy Court somehow cannot adjudicate the entitlement to
> administrative expense priority unless the tribunal handling the underlying
> litigation enters a judgment for fees and costs against the Debtor. Such a
> proposition would seem to run counter to the imposition of the automatic stay
> which precludes the pursuit, litigation and award of a claim for relief as against a
> Debtor in bankruptcy whether the claim arises from a pre-petition claim or the
> claim would ultimately be asserted against the Debtor or property of the Debtor.

Doc. 10 at 12-13.  Appellant states that both § 362(a)(1) and (a)(3) would prevent the state court

from awarding attorney's fees against UCH, and therefore the Bankruptcy Court was the only

forum to decide any entitlement to the fees.

Filing a petition for bankruptcy automatically stays "the commencement or continuation .

. . of a judicial, administrative, or other action or proceeding *against* the debtor." 11 U.S.C. §

362(a)(1) (emphasis added).  As the Appellee, UCH, points out, neither the state court judgment

nor the Bankruptcy Court's decision ever mentions the issue of the automatic stay because the

Code does not apply to actions brought by the debtor.  "[A]s the plain language of the statute

suggests, and as no less than six circuits have concluded, the Code's automatic stay does not

apply to judicial proceedings, such as this suit, that were initiated by the debtor."  Brown v.

Armstrong, 949 F.2d 1007, 1009-10 (8th Cir. 1991).  In the instant case, because the Appellee

intervened in the state court proceeding to pursue a counterclaim against the Appellant, the

action was not "against the debtor."  "[W]hether an action is 'against the debtor' is determined

by examining the debtor's status at the time proceedings were initiated."  Ostano

Commerzanstalt v. Telewide Systems, Inc., 790 F.2d 206, 207 (2d Cir. 1986).

Furthermore, any award of attorney's fees against the Appellee by the state court would

most likely not be considered acts to obtain possession of or exercise control over "property of the estate" under § 362(a)(3).  Judge Posner states:

> [T]he automatic stay is inapplicable to suits by the bankrupt ("debtor," as he is now called). This appears from the statutory language, which refers to actions "against the debtor," 11 U.S.C. § 362(a)(1), and to acts to obtain possession of or exercise control over "property of the estate," § 362(a)(3) . . . . There is, in contrast, no policy of preventing persons whom the bankrupt has sued from protecting their legal rights. True, the bankrupt's cause of action is an asset of the estate; but as the defendant in the bankrupt's suit is not, by opposing that suit, seeking to take possession of it, subsection (a)(3) is no more applicable than (a)(1) is.

Martin-Trigona v. Champion Federal Sav. and Loan Ass'n, 892 F.2d 575, 577 (7th Cir. 1989). Extending this reasoning, because a person sued by a debtor is merely protecting their legal rights by opposing the lawsuit, there is no *act* to take possession of the debtor's property.  Any award of fees by a state court would be incident to this protection of rights.

Moreover, the cases cited by Park National itself contradict its position that the state court somehow could not award attorney's fee.  See In re Property Management and Investments, Inc., 91 B.R. 170, 171 (Bkrtcy. M.D. Fla.1988) ("At the conclusion of the Circuit Court trial, the jury returned a verdict in favor of Johnson Blakely and judgment was entered against [the Debtor] PMI. The judgment included costs for attorney's fees and expenses.") ; see also In re G.I.C. Government Securities, Inc., 121 B.R. 647, 649 (Bkrtcy. M.D. Fla.1990) (Bill of Costs against the Debtor considered by the District Court).  By engaging in post-petition litigation, UCH subjected itself to the risk of paying prevailing party fees.

It appears that the state court, realizing who would ultimately foot the bill anyway, awarded fees against the guarantor and owner, rather than against his bankrupt businesses.  The decision never mentions any issue of an automatic stay as the reason for this award, and the

Bankruptcy Court merely decided that because this decision did not create any obligation on the Debtor, no entitlement to fees exists.  As the state case is now on appeal to the First District Court of Appeal, that is where the issue of whether UCH ought to have been included in the judgment should be resolved.  Therefore, the Bankruptcy Court's decision not to award fees because no judgment debt exists is not in error.

## B.  Administrative Claims Under 11 U.S.C. §503(b)(1)(A)

The second argument the Appellant raises is that the fees and costs it incurred in defending the Debtor's counterclaims should be allowed as administrative expenses.  The allowance of administrative expense claims is governed by 11 U.S.C. §503, with the subsection relevant to this case being 11 U.S.C. §503(b)(1)(A), which states:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
> > (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case . . . .

In order for an expense to be allowed as an administrative claim, it must be actual and necessary to the preservation of the debtor's estate and must have been incurred in an effort to benefit the estate as a whole.  Section 503 gives priority to creditors who incur costs in the preservation of a bankrupt business, such as rent or compensation for ongoing, post-petition operations.  This encourages parties to conduct business with a post-petition debtor because such administrative claims are accorded the first level of priority and are paid in full before claims in a lower category.  The Appellant states that because the Appellee sought $20 million, the litigation was seeking to benefit the estate and therefore its costs should be allowed as administrative expenses.

The use of the word "including" in §503(b) has allowed courts to grant administrative

expense status to expenditures not listed as one of the specific items in the statute, such as attorney's fees.  Moreover, use of the word "shall" connotes a mandatory intent.  In re Celotex, 227 F.3d 1336, 1338 (11th Cir.2000).  However, other courts have found that the administrative expense provision must be narrowly construed, as conflicting with general presumption that all of a debtor's limited resources will be equally distributed among its creditors.  See In re Rose, 347 B.R. 284 (Bankr. S.D. Ohio. 2006), In re Carco Electronics, 346 B.R. 377 (Bankr. W.D. Pa., 2006).

Under the Bankruptcy Code, only claims arising from post-petition transactions may be granted such priority.  However, the Supreme Court case of Reading Co. v. Brown, 391 U.S. 471 (1968), greatly expanded the concept of "transaction."  In Reading, the Court determined that an award of tort damages to victims of a fire caused by the Chapter 11 receiver's negligence was entitled to administrative expense priority, despite the fact that victims did not transact with the receiver, nor did the estate benefit from the event.  The Court held that the tort claims arising post-petition were "actual and necessary expenses" of preserving the estate because the statutory objective of the Code was "fairness to all persons having claims against the insolvent." Id. at 477, 482, 485.  This case can be read as suggesting that involuntary creditors of a debtor who have their loss thrust upon them should have administrative priority out of fairness, despite the plain language of the Code.

### 1. Preserving the Estate

Although greatly expanding the language of the Code, the Reading decision reflects the core concern of §503–equity–with the focus directed on the care and preservation of estate.  This concept of "fairness" permeates the case law dealing with administrative expenses, as such

expenses are dealt with on a case-by-case basis.  "The central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors."  In re Ybarra, 424 F.3d 1018, 1025 (9th Cir. 2005).  The focus when deciding whether to allow an administrative expense claim is on preventing unjust enrichment of the debtor, and not on compensating a creditor for its loss.

Therefore, courts look to any actual benefit to the estate, rather than to any loss sustained by the creditor.  In re Enron Corp., 279 B.R. 695 (Bankr. S.D.N.Y. 2002).  The Eleventh Circuit has interpreted § 503(b) to require not only that the expense be "actual" and "necessary," but also that there be a concrete benefit to the debtor's estate.  See In re Subscription Television of Greater Atlanta, 789 F.2d 1530 (11th Cir.1986).  It is not enough that the incurring of an expense secured a potential benefit or maintained right to obtain a future benefit for estate, if estate did not actually make beneficial use of the value received in exchange for incurring the expense.  In re Right Time Foods, Inc., 262 B.R. 882, 884 (Bankr. M.D. Fla. 2001).  "Claims arising under § 503(b)(1)(A) are equitable in nature and thus are valued by the amount of postpetition benefit the claimant provides to the estate and not necessarily according to the contract terms underlying the claim."  In re CM Holdings, Inc., 264 B.R. 141 (Bankr. D. Del. 2000).

In the instant case, the Appellant states that because the Debtor pursued a $20 million counterclaim, the Debtor sought to benefit the estate, and therefore the fees incurred opposing the claim should be allowed as administrative expenses.  The concern for administrative expenses is the benefit the claimant provides to the estate, not what benefit a debtor seeks. Regency incurred the fees not to preserve or benefit the estate, but to preserve its own interest in the underlying note.  "Generally, a creditor's legal fees are not allowable as an administrative

expense claim unless the creditor can demonstrate that the legal services provided a benefit to the estate."  In re Sports Shinko (Florida) Co., Ltd., 333 B.R. 483, 499 (Bkrtcy. M.D. Fla., 2005).

The decision in Reading, however, would allow such expenses to be treated as administrative claims if in the interest of fairness.  The Appellant cites two Bankruptcy Court decisions from Judge Paskay that interpreted Reading to allow prevailing party fees as administrative expenses:

> There is no question that the suit instituted by the Trustee against E.F. Hutton was an attempt to benefit and preserve a property of the estate. But for the suit commenced by the Trustee, E.F. Hutton would not have incurred these costs. Therefore, this Court is satisfied that these costs are properly chargeable against the estate as costs of administration. The fact that the Trustee was not ultimately successful in the suit against E.F. Hutton does not change this result.

In re G.I.C. Government Securities, Inc., 121 B.R. 647, 649 (Bkrtcy. M.D. Fla.1990), see also, In re Property Management and Investments, Inc., 91 B.R. 170, 172 (Bkrtcy. M.D. Fla.1988).  This views the party opposing the debtor as an unwilling creditor, much like the tort victims in Reading, with equity requiring administrative priority for the legal fees incurred in opposing the debtor's attempt to benefit the estate.  In the instant case, the Bankruptcy Court found that equity did not require treating the attorney's fees incurred by Regency as an administrative expense. Because the record reflects that Regency's expenses are secured in full by a bond, and because the amount sought to be recovered from UCH was attributable to two other parties, a reasonable person could agree with the Bankruptcy Court's decision.  Therefore, the Bankruptcy Court did not abuse its discretion in denying Park National's administrative claim.

## 2.  Pre-petition versus Post-petition Transaction

In order for a claim to be given administrative priority under 11 U.S.C. §503(b)(1)(A), "the actual, necessary costs and expenses of preserving the estate" must be "rendered *after the*

*commencement* of the case." (emphasis added).  This is central idea of an administrative

expense–encouraging parties to do business with a debtor in bankruptcy proceedings by giving

priority to expenses incurred post-petition.   The central argument of UCH, and what Appellant

Park National calls a "new argument," is that post-petition legal fees owed by virtue of a pre-

petition contract are not entitled to administration priority since they are pre-petition expenses.

        The case law of other circuits appear to support the position taken by UCH.  See In re

Hemingway Transport, Inc., 954 F.2d 1, 5-6 (1st Cir. 1992) (holding that attorneys' fee claim of

prevailing defendant incurred in defending against Chapter 7 trustee's post-petition action was

not entitled to priority payment as the right to attorney fees arose from executed pre-petition

contract, and post-petition action did not benefit estate.); Matter of Jartran, 732 F.2d 584 (7th

Cir.1984) (holding that pre-petition contracts do not trigger administrative expense priority when

the debtor's liability was fixed and irrevocable at the time of filing); In re Abercrombie, 139 F.3d

755 (9th Cir. 1998) (holding that attorneys' fees awarded post-petition in accordance with the

debtor's pre-petition contract is not a claim arising out of a post-petition transaction).

        Under all these cases, the focus is on whether the contract giving rise to the claim was

entered into before or after the bankruptcy petition.  This is because "[p]ostpetition contracts

may qualify for administrative expense priority, but costs and expenses arising out of prepetition

contracts are treated under the Bankruptcy Code as nonprioritized unsecured claims."  Id. at 757.

Under these cases, the duty to pay prevailing party fees was incurred pre-petition, and served as

consideration for the contract.  The fact that the contingency triggering this duty occurred post-

petition does not mean that attorney's fees should receive administrative priority.

        Although no Eleventh Circuit authority exists, bankruptcy courts in this circuit have

followed the reasoning of the other circuits:

> Assuming that the Debtors had an obligation under the [agreement] to reimburse APX for attorneys' fees, that obligation would have been a pre-petition obligation, and . . . the fact that the fees were incurred during the post-petition period does not elevate that obligation to the status of an administrative expense. APX can point to no post-petition transaction between the Debtors and APX that would entitle APX to payment of its attorneys' fees.

In re New Power Co., 313 B.R. 496, 506 (Bkrtcy. N.D. Ga. 2004). Although not a basis of the Bankruptcy Court's decision, because the record supports the conclusion that the pre-petition contract alone would not justify treating the post-petition attorney's fees as administrative expenses, this provides an independent ground for affirming the judgment of the Bankruptcy Court. See Bustamante v. Cueva (In re Cueva), 371 F.3d 232, 236 (5th Cir.2004) (Finding that a court may affirm a bankruptcy court's decision if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below.)

## IV. Conclusion

The Bankruptcy Court did not abuse its discretion by refusing to accord administrative priority to prevailing party fees awarded against Mr. Luizzo but not against the Debtor. Further, the Bankruptcy Court did not misapply the law, because it never suggested that it could not award fees as an administrative expense, but rather that it would not since they were not an obligation of the estate. This was a decision by the Bankruptcy Court that equity did not necessitate treating the expenses incurred by Regency as administrative expenses, and because these expenses were secured by a bond for the entire amount, this decision was not unreasonable. Therefore, the Bankruptcy Court's decision denying administrative expense priority for Regency's legal fees and costs is affirmed. Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

The Order of the Bankruptcy Court denying Regency Savings Bank's motion to compel University Centre Hotel Inc. to pay attorney's fees and costs as administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A) is affirmed.

**DONE AND ORDERED** this *22nd* day of February, 2007

*s/Maurice M. Paul*
Maurice M. Paul, Senior District Judge